UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JULIA C. KING     Plaintiff

v.     Civil Action No. 3:24-cv-737

NORTHWESTERN MUTUAL LIFE INSURANCE     Defendant

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Defendant Northwestern Mutual Life Insurance Company ("Northwestern Mutual") moves to bifurcate Plaintiff Julia C. King's ("King") breach of insurance contract claim from her statutory bad faith claim under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS § 304.12-230, *et seq.,* and her claim for common law bad faith. [DE 11]. Northwestern Mutual also requests to hold discovery in abeyance on King's bad faith claims, pending resolution of King's breach of contract claim and Northwestern Mutual's counterclaim for recission. [*Id*.]. King responded [DE 13], and Northwestern Mutual did not reply. This matter is ripe. For the reasons below, Northwestern Mutual's Motion to Bifurcate [DE 11] is **GRANTED**, and its request to hold discovery in abeyance [DE 11] is **GRANTED**.

### I. BACKGROUND

In late 2020, King was approached by Northwestern Mutual's Kentucky agent, Ralph Barringer ("Barringer"), to purchase a disability income policy with Northwestern Mutual. [DE 1-1 at 11]. King decided to apply for the disability income policy and, with the help of Barringer and his staff, she completed the application, which included a medical history questionnaire. [*Id*.].

While completing the questionnaire, King claims that "Barringer, and his staff, did not read and ask Ms. King each of the questions under the heading Diseases and Disorders spanning four

1

pages," but rather asked if King had prior health conditions generally "without further elaboration and without reciting each of the specific listed medical conditions." [*Id.*]. King asserts that she answered Barringer's questions honestly and to the best of her knowledge and that she signed the application with the good faith belief that her answers were accurately recorded. [*Id.*]. The application was subsequently submitted to Northwestern Mutual for underwriting and approval. [*Id.*].

Northwestern Mutual approved King's application and issued a disability income policy ("Policy") with a "Policy Date" of February 15, 2021, and "Date of Issue" of February 26, 2021. [*Id.*]. The initial disability income under the Policy was $10,000 per month, which was later increased on February 15, 2022, and then again February 15, 2023. [*Id.*]. The disability income benefit was payable for the duration of the disability, until King reached the maximum age of 70 years old. [*Id.* at 12]. The Policy also includes a provision, which states that after the Policy has been in force for two years from the Date of Issue, only a fraudulent misstatement in the application may be used to rescind the Policy or to deny a claim. [*Id.*]. Two years from the Date of Issue was February 26, 2023. [*Id.*].

On August 5, 2023, King was struck in the head by a bird while riding a motorcycle, which resulted in her helmet being cracked and a traumatic brain injury. [*Id.*]. The resulting injury impacted King's ability "performing the substantial and material duties of her job[.]" [*Id.*]. Accordingly, with the help of Barringer, King submitted a claim for disability income benefits under the Policy. [*Id.* at 13].

However, Northwestern Mutual allegedly denied King's claim because King's application was allegedly incomplete. [*Id.*]. Northwestern Mutual claims that "King knowingly failed to disclose her significant history of symptoms in all three areas of the spine and upper and lower

extremities, consultations with pain management specialists, years of chiropractic treatment, physical therapy, topical prescription medication, trigger point injections." [DE 7 at 47]. According to King, Northwestern Mutual "took the position that [ ] King's alleged omissions in the application allowed Northwestern Mutual to deny her claim.[.]" [*Id*.]. And notified King on April 23, 2024, that it was seeking to mutually rescind the Policy and provided King a check for her prior paid premiums. [*Id*.]. King declined Northwestern Mutual's offer to rescind. [*Id*.].

Afterwards, King filed a complaint in Jefferson Circuit Court, asserting four claims. [DE 1-1]. Her claims include: (1) breach of contract, (2) violation of KRS § 304.12-230, (3) violation of KRS § 304.12-235, and (4) breach of covenant of good faith and fair dealing. [*Id*. at 14-16]. Northwestern Mutual removed this case to federal court under diversity jurisdiction [DE 1]. Additionally, Northwestern Mutual filed a counterclaim for recission against King. [DE 7 at 42]. Northwestern Mutual now moves the Court to bifurcate King's breach of contract claim from her statutory and common law bad faith claims. [DE 11].

## II.    STANDARD

This Court may order a separate trial of one or more separate issues or claims "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The Court has full discretion on whether to bifurcate matters. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). Likewise, the decision to stay discovery on a bad faith claim while the underlying contract claim is pending is within the discretion of the Court. *Id.* at 408. Generally, when determining whether to exercise this power, the Court considers "several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 229 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). "Courts should look to case-specific

3

facts to determine whether bifurcation is proper, placing the burden on the party seeking bifurcation to show separation of issues is the most appropriate course." *Forrest B. White, Jr. Masonry, Inc. v. ABG Caulking Contractors, Inc.*, No. 5:13-CV-00194-TBR, 2014 WL 991734, at *1 (W.D. Ky. 2014).

Courts in this district have consistently bifurcated bad faith claims from other claims where resolution of a single claim would be dispositive of the entire case. *See, e.g.*, *Smith*, 403 F.3d at 407; *Austin v. State Farm Fire & Cas. Co.*, No. 1:23-CV-00140-GNS-HBB, 2024 WL 917380 (W.D. Ky. 2024); *Royal Consumer Prod. v. Martin Indus., LLC*, No. 3:15-CV-00830-CRS, 2016 WL 3080841, at *1 (W.D. Ky. 2016) ("When resolving one issue will likely dispose of other issues, bifurcation may be particularly appropriate."); *Hub at Lovers Lane, LLC v. Cincinnati Ins.*, No. 1:24-CV-00006-BJB-HBB, 2024 WL 1701977 (W.D. Ky. 2024); *Brantley v. Safeco Ins. of Am.*, No. 1:11-CV-00054-R, 2011 U.S. WL 6012554 (W.D. Ky. 2011); *contra Curry v. State Farm Mut. Auto. Ins.*, No. 2:19-CV-4469, 2020 WL 13885993, at *2 (S.D. Ohio 2020) (noting that "[a]lthough the general rule among district courts in Kentucky may be to grant bifurcation, district courts in the Southern District of Ohio routinely deny such motions and collecting cases.").

Generally, a bad faith claim fails if a plaintiff does not prevail on the coverage issue because "Kentucky law does not provide a bad-faith cause of action unless the plaintiff can prove that the insurance company had a contractual obligation to pay the claim." *Holloway v. Ohio Sec. Ins.*, No. 3:14-CV-00856-CRS, 2015 WL 6870141, at *1 (W.D. Ky. 2015); *See also, Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-CV-00155, 2013 WL 98059, at *2 (W.D. Ky. 2013) ("Where the bad faith claim depends on the resolution of the underlying contractual dispute regarding the policy of insurance, it is reasonable for a court to resolve the coverage question before allowing the bad faith claim to proceed."). Courts in this district, however, have denied bifurcation where

the facts at issue are inextricably intertwined and there is "no purpose to be served by bifurcation of the claims." *See Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001). Claims are inextricably intertwined when one would offer the same evidence to prove or defeat either claim. *Id.*

### III.   ANALYSIS

A.   Motion for Bifurcation

Northwestern Mutual moves the Court to bifurcate King's breach of contract claim and its counterclaim for recission, from King's statutory and common law bad faith claims.[1] [DE 11; DE 1-1 at 14-17]. King responded that she "does not oppose the Court bifurcating, for discovery and for trial, her two tort bad faith claims: (i) violation of KRS 304.12-230 [ ]; and (ii) breach of covenant of good faith and fair dealing (common law bad faith)." [DE 13 at 83]. However, King argues that her "contractual related claims should proceed as pleaded and unabated[.]" [*Id.*].

King's response does not discuss her statutory bad faith claim under KRS § 304.12-235, and whether she opposes bifurcation of that claim. [DE 13]. KRS § 304.12-235(2) states: "(2) If an insurer fails to make a good faith attempt to settle a claim within the time prescribed in subsection (1) of this section, the value of the final settlement shall bear interest at the rate of twelve percent (12%) per annum from and after the expiration of the thirty (30) day period." Because KRS § 304.12-235 has a "good faith requirement," violation of this statute would be a bad faith claim. *See, e.g.*, *Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 664 (W.D. Ky. 2013) ("Kentucky courts have analyzed the good faith requirement inversely, as proof of the absence of bad faith."); *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky.

---

[1] Northwestern Mutual's counterclaim for recission goes to whether Northwestern Mutual breached. In other words, if Northwestern Mutual prevails on its recission counterclaim, then King's breach of contract claim fails. Accordingly, Northwestern Mutual's counterclaim for recission is a contract claim for the purposes of bifurcation.

2006) ("Good faith, however, is somewhat of a misnomer, as the proof is really of bad faith. In fact, in most cases, good faith is just a presumption that exists absent evidence of bad faith." (internal quotations omitted)). Accordingly, King's KRS § 304.12-235 claim, will be analyzed with her other statutory and common law bad faith claims.

The Court must determine whether bifurcation of these claims would provide for convenience, avoid prejudice, or expedite and economize. *See* Fed. R. Civ. P. 42(b). Courts in this district have generally bifurcated under Rule 42(b) for breach of contract and bad faith claims in insurance actions because breach of contract must be determined for the plaintiff to prevail on a bad faith claim. *See, e.g., Id.*; *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023TBRLLK, 2017 WL 2798501, at *2 (W.D. Ky. 2017); *Bruckner v. Sentinel Ins. Co., LTD*, No. CIV.A. 09-195-JBC, 2011 WL 589911, at *2 (E.D. Ky. 2011). Under Kentucky law, for a plaintiff to succeed on a bad faith claim, the plaintiff must prove first that the defendant has a contractual obligation. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). As a result, Kentucky law supports bifurcations in situations like the one here. *See Sanders v. Motorists Mut. Ins. Co.*, No. CIV. A. 3:08-37-DCR, 2008 WL 4534089 (E.D. Ky. 2008), at * 2-3 (citing *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993)).

Courts have also found it necessary to bifurcate these claims because bifurcation is "more efficient" and "avoids the prejudice and confusion." *Alvey*, 2017 WL 2798501, at *1; *see also* Sanders, 2008 WL 4534089, at *3 (explaining that presenting a contract issue and bad faith issue to the jury "may unfairly bleed the evidence for one into the evidence for the other"). And "[w]here the bad faith claim depends on the resolution of the underlying contractual dispute regarding the policy of insurance, it is reasonable for a court to resolve the coverage question before allowing the bad faith claim to proceed." *See Nationwide*, 2013 WL 98059, at *2.

Here, the viability of King's bad faith claims hinge on the existence of an enforceable obligation for Northwestern Mutual to pay. *See Davidson*, 25 S.W.3d at 100. In other words, King must prevail on the breach of contract claim to prevail on her bad faith claims arising from the same contract, as Northwestern Mutual cannot have breached a contract in bad faith, if it did not breach the contract to begin with. *See Sanders*, 2008 WL 4534089, at *2-3. Thus, deciding King's breach of contract claim and Northwestern's mutuals counterclaim for recission may render the King's bad faith claims irrelevant. Likewise, because King's breach of contract claim may dispose of her bad faith claims, bifurcation will further judicial economy. *See White v. ABG Caulking Contra., Inc.*, No. 5:13-CV-00194-TBR, 2014 WL 991734, at *1 (W.D. Ky. 2014) ("bifurcation serves the interests of judicial economy and convenience where resolution of one claim may resolve the entire matter."). And bifurcation promotes fairness and justice, as presenting both issues to the jury may result in evidence unfairly being conflated between the two claims. *See Sanders*, 2008 WL 4534089, at *2-3. Therefore, fairness and judicial economy counsel in favor of bifurcating King's breach of contract claim and Northwestern Mutual's counterclaim for recission from King's remaining bad faith claims.

Because separating King's breach of contract claim and Northwestern Mutual's counterclaim for recission from King's bad faith claims will promote judicial efficiency, limit jury confusion, and mitigate possible prejudice towards Northwestern Mutual, Northwestern Mutual has met its burden, and bifurcation is proper. As a result, Northwestern Mutual's Motion to Bifurcate [DE 11] is **GRANTED**.

    B.    <u>Motion to Hold Discovery in Abeyance</u>

In addition to bifurcation of the claims, Northwestern Mutual asks the Court to stay discovery on King's bad faith claims for many of the same reasons. [DE 11]. As with bifurcation,

7

King's bad faith claim turns on her breach of contract claim. Failure to grant a stay under these circumstances may result in needless discovery. Thus, staying discovery on King's contingent bad faith claim promotes judicial economy in accordance with the principal purpose of Rule 42(b). For these reasons, Northwestern Mutual's request for a stay in discovery [DE 11] is **GRANTED**.

## CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise sufficiently advised **IT IS ORDERED** that:

(1) Northwestern Mutual's Motion to Bifurcate [DE 11] is **GRANTED**. The Court shall bifurcate this matter into two separate proceedings. The first will address King's contract claim (Count I) [DE 1-1] and Northwestern Mutual's counterclaim for recission [DE 7]. The second will address King's claims for bad faith (Count II, III and IV).

(2) Northwestern Mutual's Motion to Stay Discovery is **GRANTED**. [DE 11]. Discovery for King's bad faith claims **SHALL BE HELD IN ABEYANCE** until the conclusion of the breach of contract proceeding and Northwestern Mutual's counterclaims.

May 7, 2025

Rebecca Grady Jennings, District Judge
United States District Court